USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______________
DATE FILED: 8/19/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEYED HAKHAMANESH MOSTAFAVI and AFSANEH BEHBABHANI,

Plaintiffs,

-against-

MARCO RUBIO, *in his official capacity as Secretary of State*, *et al.*,

Defendants.

No. 25-CV-4382 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Seyed Hakhamanesh Mostafavi ("Mostafavi") and Afsaneh Behbahani ("Behbahani") (collectively, "Plaintiffs") bring this action against Defendants Marco Rubio, in his official capacity as Secretary of State; Nancy Abella, in her official capacity as Consul General at the United States Embassy in Ankara, Turkey; and John Doe consular officials, in their official capacity as consular officers (collectively, the "Government"), asserting claims under the Mandamus Act and Administrative Procedure Act (the "APA") arising from the alleged delay in adjudicating Behbahani's application for an IR-5 immigrant visa.

Plaintiffs allege that the Government has failed to complete administrative processing or otherwise render a final adjudication of Behbahani's immigrant visa application following the issuance of a notice under § 221(g) of the Immigration and Nationality Act ("INA") and her submission of Form DS-5535. Plaintiffs now seek an order compelling the Government to adjudicate the application under the Mandamus Act and APA. Pending before the Court is the

Government's Motion to Dismiss the Complaint (the "Motion") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (ECF No. 22.)

For the following reasons, the Government's Motion is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

The following background is drawn from the Complaint. The Court accepts the Complaint's allegations as true and draws all reasonable inferences in Plaintiffs' favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff Seyed Hakhamanesh Mostafavi is a naturalized United States citizen residing in New York, New York. (Compl. ¶ 24.) He is an assistant professor at the New York University School of Medicine. (*Id.*) Plaintiff Afsaneh Behbahani, Mostafavi's mother, is an Iranian citizen residing in Iran. (*Id.* ¶ 24.)

On October 4, 2021, Mostafavi petitioned for an IR-5 immigrant visa on Behbahani's behalf by filing a Form I-130, Petition for Alien Relative. (*Id.* ¶ 26.) An IR-5 immigrant visa would permit Behbahani, as the parent of a United States citizen, to immigrate to the United States as a lawful permanent resident. (*Id.* ¶ 15.) The United States Citizenship and Immigration Services ("USCIS") approved the petition on December 16, 2022. (*Id.* ¶ 27.) Behbahani thereafter applied for an immigrant visa by submitting a Form DS-260, Online Immigrant Visa Application, on January 25, 2023. (*Id.* ¶ 28.) On February 13, 2023, the National Visa Center determined that the application was documentarily complete and qualified for consular processing. (*Id.* ¶ 29.) Although the case was initially assigned in error to the U.S. Embassy in Abu Dhabi, United Arab

[1] The Court refers to the parties' motion papers as follows: (1) the Government's memorandum of law in support of its Motion, ECF No. 23 ("Gov't. Mem."); (2) Plaintiffs' memorandum of law in opposition, ECF No. 25 ("Pls.' Opp."); and (3) the Government's reply memorandum of law, ECF No. 26 ("Gov't. Reply").

Emirates, it was later transferred to the U.S. Embassy in Ankara, Turkey, on June 11, 2024. (*Id.* ¶ 30.) Following the transfer, Behbahani updated her immigrant visa application on September 13, 2024. (*Id.*, Ex. A.)

Behbahani appeared for her immigrant visa interview at the U.S. Embassy in Ankara on October 1, 2024. (*Id.* ¶ 31.) At the conclusion of the interview, a consular officer issued a notice under § 221(g) of the INA informing her that additional administrative processing was required. (*Id.*, Ex. B.) The notice directed Behbahani to complete Form DS-5535, a supplemental questionnaire requesting additional background information, which she submitted the same day. (*Id.* ¶ 32.) More than seven months elapsed following the interview and supplemental submission without further action on Behbahani's immigrant visa application. (*Id.* ¶ 33.) During that time, Mostafavi sought assistance from several congressional members regarding the status of Behbahani's immigrant visa application. (*Id.* ¶ 34.) Those inquiries yielded only responses indicating that administrative processing remained pending. (*Id.*)

Plaintiffs subsequently requested expedited processing of Behbahani's immigrant visa application. (*Id.* ¶ 37, Ex. D.) In support of that request, Plaintiffs asserted that Behbahani, who is in her mid-seventies, lives alone in Iran, suffers from progressive hearing loss, and has no immediate family in Iran to assist her with her daily needs. (*Id.* ¶ 35.) Plaintiffs further represented that one of Behbahani's grandchildren has autism spectrum disorder and that the child's treating psychologist opined that Behbahani's presence would benefit both the child and his family. (*Id.* ¶ 36, Ex. C.) Plaintiffs also maintained that deteriorating conditions in Iran and travel restrictions had made family reunification increasingly difficult. (*Id.* ¶¶ 38–40.) The State Department nonetheless denied the request. (*Id.* ¶ 37, Ex. D.)

The Consular Electronic Application Center ("CEAC") reflects Behbahani's visa application as "refused" while simultaneously stating that she "will receive another adjudication once such processing is complete." (*Id.* ¶ 43, Ex. E.) Plaintiffs maintain that, despite the issuance of the § 221(g) notice, the Government has failed to complete administrative processing or otherwise render a final adjudication of Behbahani's immigrant visa application. (*Id.* ¶¶ 43–48.) Plaintiffs, as a result, commenced this action under the Mandamus Act and APA, seeking an order compelling the Government to complete adjudication of Behbahani's immigrant visa application. (*Id.* ¶¶ 49–78.)

## PROCEDURAL HISTORY

Plaintiffs commenced this action on May 23, 2025. (ECF Nos. 1, 6.) The Government filed a pre-motion conference letter seeking leave to file a motion to dismiss the Complaint on August 28, 2025. (ECF No. 16.) The Court waived the pre-motion conference and set a briefing schedule on September 8, 2025. (ECF No. 19.) After the Court granted the Government's request for an extension of time to file its Motion, (ECF No. 21), the Government served its opening papers on October 29, 2025. (ECF Nos. 22–24.) Plaintiffs served their opposition papers on December 2, 2025. (ECF No. 25.) The Government served its reply papers on December 17, 2025. (ECF No. 26.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (citation and internal quotations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by

a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the district court must accept as true all material facts alleged in the complaint. *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). Without jurisdiction, the district court is devoid of the "power to adjudicate the merits of the case," and therefore must decide a motion under Rule 12(b)(1) before addressing any motion on the merits. *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

**II. Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the district court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, it is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether a plaintiff has pled sufficient facts to nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where

the allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

The Government moves to dismiss the Complaint on several grounds, including that (1) Plaintiffs' claims are moot because Behbahani's immigrant visa application was adjudicated and refused under § 221(g) of the INA; (2) Plaintiffs' claims are barred by the doctrine of consular nonreviewability; (3) Plaintiffs fail to state a claim under the APA because there is no discrete agency action that has been unlawfully withheld or unreasonably delayed; (4) Plaintiffs cannot obtain mandamus relief because the Government owes them no clear, nondiscretionary duty and the APA provides an adequate alternative remedy; and (5) Plaintiffs' request for declaratory relief must be dismissed because the Declaratory Judgment Act neither provides an independent cause of action nor confers subject matter jurisdiction. (*See generally* Gov't. Mem.) The Court addresses each argument in turn.

### I. Threshold Matters

#### A. Mootness

The Government asserts that the Court lacks subject matter jurisdiction over Plaintiffs' claims seeking to compel an adjudication of Behbahani's immigrant visa application because the State Department already adjudicated and refused the application when the consular officer issued the § 221(g) notice on October 1, 2024, during Behbahani's interview at the U.S. Embassy. (Gov't. Mem. at 9–10.) Plaintiffs respond by arguing that the § 221(g) refusal did not constitute a final adjudication of Behbahani's immigrant visa application because the application remains subject to administrative processing. (Pls.' Opp. at 8–11.)

Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper "when the district court lacks the statutory or constitutional power to adjudicate" the case. *Green v. Dep't of Educ.*, 16 F.4th 1070, 1075 (2d Cir. 2021). When considering a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016). The mootness doctrine "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit" such that the case is no longer a "Case" or "Controversy" for purposes of Article III. *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (cleaned up). When "events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it," a federal court is required to "dismiss the case as moot." *FBI v. Fikre*, 601 U.S. 234, 240–41 (2024) (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). The party asserting that a case is moot "bears the burden to establish that a once-live case has become moot." *West Virginia*, 597 U.S. at 719.

The Government fails to meet that burden. Contrary to the Government's argument, Plaintiffs' claims for declaratory and injunctive relief are not moot merely because Behbahani received a § 221(g) refusal notice at the conclusion of her consular interview. While an action to compel the adjudication of a visa application may be moot when the executive agency "grants the relief sought in the complaint prior to the court's adjudication," *Silva v. United States Citizenship & Immigr. Servs.*, 2015 WL 2330304, at *3 (S.D.N.Y. Mar. 26, 2015), courts in this Circuit recognize that "a visa that is in 'administrative processing' cannot be said to have received final approval." *Saleh v. Tillerson*, 293 F. Supp. 3d 419, 431–32 (S.D.N.Y. 2018). Indeed, courts in this District have repeatedly rejected similar mootness arguments. *See, e.g.*, *Rashed v. Blinken*, 2024

WL 4904701, at *2 (S.D.N.Y. Nov. 27, 2024) ("The State Department has failed to carry its burden to . . . establish" mootness because plaintiff seeks relief from the "indefinite state" of "additional administrative processing"); *Esghai v. U.S. Dep't of State*, 2024 WL 4753799, at *3 (S.D.N.Y. Nov. 12, 2024) (rejecting the Government's argument that a "final decision" was rendered on plaintiff's visa application where "the [consular] officer refused [plaintiff's] visa application under INA § 221(g)"); *Waris v. Bitter*, 2024 WL 3237914, at *5 (S.D.N.Y. June 28, 2024) (acknowledging "that any applicant with a visa application in administrative processing has not yet received a final decision").

Most recently, a court in this District rejected the Government's mootness argument where "the status report of [plaintiff's] visa applications accessed . . . [through] the Department of State's Consular Electronic Application Center website notified [plaintiff] that he 'will receive another adjudication once such [administrative] processing is complete.'" *Huma Therapeutics, LTD v. U.S. Dep't of State*, 2026 WL 1865036, at *2 (S.D.N.Y. June 29, 2026) (cleaned-up). The same is true here. The CEAC reflects Behbahani's immigrant visa application as "refused" while simultaneously stating that she "will receive another adjudication once such processing is complete." (Compl. ¶ 43, Ex. E.) Moreover, the § 221(g) notice itself directed Behbahani to complete Form DS-5535, which she submitted on the same day as her interview. (*Id.* ¶ 32.) Notwithstanding the refusal of Behbahani's immigrant visa application, "the consular officer's refusal does not deprive [her] of a personal stake in this litigation because [she] seeks different relief here: a further decision on [the visa] application." *Esghai*, 2024 WL 4753799, at *3 (cleaned-up).

The Motion is therefore denied to the extent the Government seeks dismissal pursuant to Rule 12(b)(1) on mootness grounds.

**B. Consular Nonreviewability**

The Government next argues that this action is barred in its entirety by the doctrine of consular nonreviewability. (Gov't. Mem. at 13–16.) The Government contends that this Court should not be persuaded by the growing number of courts in this Circuit holding that the doctrine of consular nonreviewability does not apply to challenges to delays in visa adjudications. (*Id*. at 15.) Plaintiffs disagree, arguing that the doctrine only precludes judicial review of a consular officer's decision to issue or deny a visa, which does not extend to an action seeking further adjudication of a visa application that remains subject to administrative processing. (Pls.' Opp. at 12.)

The doctrine of consular nonreviewability has generally prohibited "judicial review of a consular officer's denial of a visa." *Huma Therapeutics*, 2026 WL 1865036, at *3 (quoting *Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024)). The Second Circuit, consistent with this principle, has long recognized that courts may not "review . . . the action of [consular officers] suspending or denying the issuance of immigration visas." *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978). District courts have likewise extended the doctrine of nonreviewability to prohibit judicial review of the visa application process itself, including actions seeking to compel a decision on a visa application within a reasonable period of time. *See Abdo v. Tillerson*, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases).

The Supreme Court, however, recently clarified that the doctrine of consular nonreviewability is non-jurisdictional. *See Muñoz*, 602 U.S. at 908 n.4. The doctrine no longer implicates a federal court's subject matter jurisdiction. *Id*. Following *Muñoz*, courts in this Circuit have declined to extend the doctrine of consular nonreviewability to actions seeking to compel further adjudication of visa applications that remain subject to administrative processing. *See, e.g.*,

*Huma Therapeutics*, 2026 WL 1865036, at *3 (declining to apply the doctrine of consular nonreviewability to plaintiffs' unreasonable-delay claims pursuant to the APA); *Qazi v. Rubio*, 2026 WL 1584662, at *5 (S.D.N.Y. June 3, 2026) (concluding that "'[j]udicial review of challenges to a consular officer's failure to make any decision at all does not interfere with the plenary power of Congress to prescribe the terms and conditions upon which aliens may come to this country,' nor does it 'call into question the enormous discretion that Congress has granted the Executive in this area.'"); *Khan v. Armstrong*, 2026 WL 2123217, at *4 (N.D.N.Y. July 23, 2026) ("Where a plaintiff seeks only to compel further agency action on a visa application that remains under consideration, rather than challenge the substance of a visa determination, judicial review does not implicate the core concerns underlying the doctrine of consular nonreviewability.").

This Court joins the growing consensus that there is a distinction between reviewing the substance of a consular officer's visa determination and compelling further action on a visa application that remains subject to purgatorial administrative processing.[2] The former requires a court to review a determination committed to the discretion of a consular officer, whereas the latter does not. Were courts precluded from reviewing the latter, "the Government could hold visa applications in abeyance for decades without providing any reasoned basis for doing so." *Qazi*, 2026 WL 1584662, at *5 (quoting *Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 420 (S.D.N.Y. 2006)). Behbahani appeared for her immigrant visa interview at the U.S. Embassy in Ankara on October 1, 2024—almost two years ago. (Compl. ¶ 31.) Yet her application remains

[2] The Government's reliance on *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) and *Chen v. Rubio*, 158 F.4th 393, 396 (2d Cir. 2025) is misplaced. Although *Hsieh* recognized that courts may not review the action of consular officers suspending or denying the issuance of immigration visas, 569 F.2d at 1181, Plaintiffs do not ask this Court to review the substance of the consular officer's decision to refuse Behbahani's visa. Rather, they seek to compel further action on an application that remains subject to administrative processing. (Pls.' Opp. at 12.) Similarly, although *Chen* applied the doctrine of consular nonreviewability to preclude judicial review of a consular officer's visa determination, it did not address whether the doctrine bars an action seeking to compel further adjudication of a visa application that remains subject to administrative processing. *Chen*, 158 F.4th at 396.

subject to administrative processing, and the CEAC reflects that Behbahani "will receive another adjudication once such processing is complete." (*Id*. ¶ 43, Ex. E.) The Government cannot continue to hide behind a veil of consular nonreviewability when its own records make clear that the consular process has yet to run its course.

The Court therefore declines to extend the doctrine of consular nonreviewability to bar Plaintiffs' claims seeking to compel further adjudication of Behbahani's immigrant visa application.

## II. APA Claims

The Government next seeks to dismiss Plaintiffs' claims under the APA. The Government first argues that there is no further agency action to compel because Behbahani's immigrant visa application has already been adjudicated. (Gov't. Mem. at 10–13.) The Government further argues that, even if additional agency action remains, any delay in adjudicating Behbahani's immigrant visa application is not unreasonable. (*Id*. at 16–22.) The Court addresses each argument in turn.

### A. Withheld Agency Action

As a threshold matter, the Government argues that there is no "withheld" or "unreasonably delayed" action to compel because the consular officer already performed the only discrete action required by law when refusing Behbahani's immigrant visa application pursuant to § 221(g) of the INA. (Gov't. Mem. at 10–13.) Plaintiffs respond that the § 221(g) refusal, accompanied by further administrative processing, does not constitute a completed adjudication. (Pls.' Opp. at 3–12.)

The Court has already concluded that the § 221(g) refusal neither rendered this action moot nor triggered the doctrine of consular nonreviewability. Those conclusions rest on Plaintiffs' allegations that Behbahani's application remains in administrative processing and continues to be

subject to further review. (Compl. ¶ 43, Ex. E.) The Court need not reinvent the wheel with respect to Plaintiffs' APA claims. The statutes are clear. Section 1202(b) provides that immigrant visa applications "shall be reviewed and adjudicated by a consular officer," 8 U.S.C. § 1202(b), while § 555(b) of the APA requires agencies to conclude matters presented to them "within a reasonable time." Courts in this Circuit have repeatedly rejected the Government's argument that a consular officer satisfies the Government's obligation to adjudicate an immigrant visa application merely by issuing a § 221(g) refusal where the application remains subject to administrative processing. *See, e.g.*, *Khan*, 2026 WL 2123217, at *6 (denying Government's motion to dismiss APA claim and concluding that, notwithstanding a § 221(g) refusal, 8 U.S.C. § 1202(b) imposed a continuing duty to adjudicate visa applications that remained subject to administrative processing); *Huma Therapeutics*, 2026 WL 1865036, at *3 (recognizing that because the Government "failed to conclude adjudication of [plaintiff's] visa applications presently in administrative processing, the Court must go on to assess whether the resulting delay is 'unreasonabl[e]'"); *Qazi*, 2026 WL 1584662, at *7 (rejecting the Government's argument that the § 221(g) refusal satisfied its obligation to adjudicate the visa application and reasoning that accepting such an argument would "elevate form over substance" and permit the Government to "flout its statutory obligation without consequence").

The Court therefore concludes that the § 221(g) refusal did not complete the adjudication of Behbahani's immigrant visa application and that further agency action remains to be completed.[3]

[3] The Court need not address Plaintiffs' alternative argument that Behbahani's submission of the requested Form DS-5535 independently triggered a duty to reconsider her application under 22 C.F.R. § 42.81(e). (Pls.' Opp. at 7, 11.) Because the Court concludes that Behbahani's application remains subject to further adjudication and that the Government therefore has a continuing duty to adjudicate the application, resolution of Plaintiffs' alternative argument under § 42.81(e) is unnecessary.

**B. Unreasonable Delay**

The next question, then, is whether Plaintiffs have established that the Government's delay in adjudicating Behbahani's immigrant visa application has been unreasonable. Under the APA, an "agency shall proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). When agency action is "unlawfully withheld or unreasonably delayed," a reviewing court shall "compel" such action. *Id.* § 706(1). In evaluating claims of unreasonable delay under the APA, the Second Circuit applies a six-part standard enunciated in *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). *See Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013). These six factors include:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (citation modified). While the *TRAC* factors are "fact-intensive," it is "not uncommon for courts to resolve unreasonable delay claims concerning visa adjudication on a motion to dismiss."[4] *Huma Therapeutics*, 2026 WL 1865036, at *4 (quoting *Ahmed v. Bitter*, 2024 WL 22763, at *5 (E.D.N.Y. Jan. 2, 2024)).

---

[4] The Court rejects Plaintiffs' argument that disposition of their unreasonable delay claims is premature at this juncture. (Pls.' Opp. at 14.) Plaintiffs are correct that the *TRAC* analysis is "generally fact-intensive," *Kaur v. Mayorkas*, 2023 WL 4899083, at *5 n.6 (S.D.N.Y. Aug. 1, 2023), but incorrect insofar as they contend that such issues cannot be resolved at the motion to dismiss stage. *See, e.g.*, *Huma Therapeutics*, 2026 WL 1865036, at *4; *Ahmed*, 2024 WL 22763, at *7; *Esghai*, 2024 WL 4753799, at *6.

### i. *TRAC* Factors One and Two

In considering the first two factors, which both relate to the reasonableness of the delay, Congress has not imposed a statutory deadline. *See Waris*, 2024 WL 3237914, at *6; *Ahmed*, 2024 WL 22763, at *7. Instead, Congress gives agencies "wide discretion in the area of immigration processing." *Saharia v. United States Citizenship & Immigr. Servs.*, 2022 WL 3141958, at *5 (S.D.N.Y. Aug. 5, 2022) (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)).

In determining the length of the delay, however, courts in this Circuit have taken varying approaches as to when the relevant period begins to run in cases involving Form I-130 applications. *See, e.g.*, *Waris*, 2024 WL 3237914, at *6 (considering multiple possible start dates in assessing the delay associated with an approved Form I-130 and subsequent immigrant visa processing); *Ahmed*, 2024 WL 22763, at *8 (considering both the date when a visa number became available and the date the plaintiff became documentarily qualified when analyzing the delay in adjudicating the plaintiff's Form I-130); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 225 (E.D.N.Y. 2021) (looking at when pending applications were filed in applying the *TRAC* factors to Form I-130 applications). In other similarly situated immigration matters, courts rely on the date the application was filed through the date of the court's opinion. *See, e.g.*, *Kaur*, 2023 WL 4899083, at *7; *Ying Yu Liu v. Wolf*, 2020 WL 2836426, at *7 (S.D.N.Y. May 30, 2020); *Boussana v. Johnson*, 2015 WL 3651329, at *1 (S.D.N.Y. June 11, 2015).

Despite these varying approaches to calculating the relevant period, courts in this Circuit generally agree that "immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Waris*, 2024 WL 3237914, at *6 (quoting *Cohen v. Jaddou*, 2023 WL 2526105, at *5 (S.D.N.Y. Mar. 15, 2023)); *see also Huma Therapeutics*, 2026 WL 1865036, at *4 (same); *Khan*, 2026 WL 2123217, at *6 (same);

*Gharedaghi v. Blinken*, 2025 WL 2300763, at *5 (D. Conn. Aug. 8, 2025) (same). While some courts have diverged from this general rule, those decisions have turned on materially different circumstances. For instance, a district court recently found a seven-month delay in adjudicating an H-1B nonimmigrant visa application unreasonable. *See Qazi*, 2026 WL 1584662, at *9. There, the *Qazi* court recognized that the applicable timelines differ between nonimmigrant and immigrant visa applications. *Id*. Specifically, the *Qazi* court recognized that the "benefits of an immigrant visa—permanent residence—are distinct from those provided by a nonimmigrant visa—only temporary residence." *Id*. (quoting *Kennedy v. United States Dep't of State*, 2025 WL 662566, at *4 (D. Mass. Feb. 28, 2025)). In assessing the reasonableness of the seven-month delay, the *Qazi* court therefore considered, among other circumstances, that the nonimmigrant visa at issue provided only "a time-limited benefit." *Id*.

That is not the case here because Behbahani is seeking an immigrant visa. (Compl. ¶ 26.) Even measuring the delay from the earliest possible date—the filing of Mostafavi's Form I-130 application on October 4, 2021—nearly five years have elapsed. (*Id*.) Although this delay approaches the outer boundary of the three-to-five-year range, courts in this Circuit have often declined to find delays of this length unreasonable. *See Waris*, 2024 WL 3237914, at *6 (collecting cases); *Aydemir v. Garland*, 2022 WL 4085846, at *4 (S.D.N.Y. Sept. 6, 2022) (noting that "courts generally conclude that a green card delay of less than four years is reasonable on its face; by contrast, delays exceeding six years are often found unreasonable"). Moreover, measuring the delay from any of the other dates yields a substantially shorter period. USCIS approved the Form I-130 on December 16, 2022; Behbahani submitted her immigrant visa application on January 25, 2023; she became documentarily qualified on February 13, 2023; and she appeared for her consular interview on October 1, 2024. (Compl. ¶¶ 27–31.) Under any of these possible starting points,

the alleged delay remains within the range that courts in this Circuit have generally declined to find unreasonable. *See Waris*, 2024 WL 3237914, at *6; *Ahmed*, 2024 WL 22763, at *8. The first two *TRAC* factors therefore weigh in the Government's favor.

**ii. *TRAC* Factors Three and Five**

The third and fifth factors are "often considered together" and require the Court "to examine the nature and extent of the interests prejudiced by delayed agency adjudication." *Saharia*, 2022 WL 3141958, at *6 (collecting cases). Plaintiffs allege that the delay in adjudicating Behbahani's immigrant visa application has significantly affected her health and welfare. (Compl. ¶ 35.) Behbahani is in her mid-seventies, lives alone in Iran, suffers from progressive hearing loss, and lacks immediate family members who can assist with her daily needs. (*Id.*) Plaintiffs further allege that Behbahani's presence in the United States would benefit her grandson, who has been diagnosed with autism spectrum disorder, and rely on a psychologist's letter concerning the benefits her presence would provide. (*Id.* ¶ 36, Ex. C.) These allegations implicate the type of human health and welfare interests contemplated by the third and fifth *TRAC* factors.

The Government disagrees, arguing that the recent Second Circuit decision in *Chen v. Rubio*, 158 F.4th 393 (2d Cir. 2025) confirms that the third and fifth factors weigh against Plaintiffs. (Gov't. Mem. at 19.) There, the Second Circuit explained that a United States citizen sponsoring a noncitizen parent lacks a constitutional right to reunite. *Chen*, 158 F.4th at 396. What the Government fails to mention, however, is that the Second Circuit's decision in *Chen* does not address the *TRAC* factors. Nor does it discuss the relevant *TRAC* standard. This Court will instead abide by the precedent directly addressing the third and fifth *TRAC* factors, which requires courts to consider the "nature and extent of the interests prejudiced by delayed agency adjudication." *Saharia*, 2022 WL 3141958, at *6. Applying that standard, the Court cannot ignore the alleged

adverse effects on Behbahani's health and welfare resulting from the delay in adjudicating her visa application, as well as the asserted impact on her family. (Compl. ¶¶ 35–36, Ex. C.) The third and fifth *TRAC* factors therefore weigh in Plaintiffs' favor. *See Lyons v. United States Citizenship & Immigr. Servs.*, 2023 WL 144879, at *8–9 (S.D.N.Y. Jan. 10, 2023) (holding that the third and fifth *TRAC* factors weigh in favor of plaintiff when "plaintiff plausibly allege[d] that he ha[d] endured at least some prejudice to important interests as a result of USCIS's delay"); *Waris*, 2024 WL 3237914, at *7 (same).

**iii. *TRAC* Factor Four**

The fourth *TRAC* factor requires courts to consider the effect of expediting delayed agency action on agency activities of a higher or competing priority. This factor, alongside the first, is considered the "most important." *See Cohen*, 2023 WL 2526105, at *7. Courts, however, generally find this factor to weigh in favor of the government "[w]hen granting a plaintiff relief would simply move them to the front of the line" with respect to their visa application. *Sheiner v. Mayorkas*, 2023 WL 2691580, at *9 (S.D.N.Y. Mar. 29, 2023); *Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication.") Even where courts conclude that all other *TRAC* factors favor a petitioner, "it is appropriate to refuse to grant relief, even though all the other factors considered in *TRAC* favor it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Huma Therapeutics*, 2026 WL 1865036, at *5 (S.D.N.Y. June 29, 2026) (quoting *Pesantez v. Johnson*, 2015 WL 5475655, at *4 (E.D.N.Y. Sept. 17, 2015)); *see also Aydemir*, 2022 WL 4085846, at *6 (same).

Plaintiffs' principal argument is that the Government fails to demonstrate that an actual queue exists for adjudicating Behbahani's immigrant visa application. (Pls.' Opp. at 21–23.) Although Plaintiffs characterize their requested relief as seeking "timely processing," rather than expedited treatment, (*id*. at 21), the relief sought would nonetheless require the Government to prioritize Behbahani's immigrant visa application at the expense of competing applications seeking similar adjudication. Indeed, Plaintiffs have already attempted to expedite Behbahani's immigrant visa application, albeit unsuccessfully. (Compl. ¶ 37, Ex. D.) Notwithstanding Plaintiffs' characterization of their requested relief, the Court has difficulty interpreting that relief in any other way than "putting . . . petitioner at the head of the queue." *Aydemir*, 2022 WL 4085846, at *6; *Lyons*, 2023 WL 144879, at *7. The fourth *TRAC* factor therefore weighs in the Government's favor.

**iv. *TRAC* Factor Six**

The last *TRAC* factor concerns whether the agency has acted in bad faith or impropriety in delaying the adjudication of Behbahani's immigrant visa. Because Plaintiffs do not allege that the Government has acted in bad faith, this factor is deemed neutral. *See Qi v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 2262661, at *7 (S.D.N.Y. May 17, 2024) ("Plaintiff does not allege bad faith, unfairness, or other impropriety, so the sixth TRAC factor is neutral.").

* * *

While the Government is obligated to render a final decision on Behbahani's immigrant visa application presently in administrative processing, the *TRAC* factors do not support a finding that a final determination has been unreasonably delayed. The Court therefore GRANTS the Motion with respect to Plaintiffs' APA claims.

## III. Mandamus Claim

The Government next argues that Plaintiffs fail to state a claim for relief under the Mandamus Act. (Gov't. Mem. at 11–12.) The Government contends that Plaintiffs cannot establish the requirements for mandamus relief because the APA provides an adequate alternative remedy and, in any event, the Government has no plainly defined and peremptory duty to further adjudicate Behbahani's immigrant visa application following its refusal under § 221(g). (*Id.*) Plaintiffs respond that the Government has a nondiscretionary duty to adjudicate Behbahani's immigrant visa application within a reasonable time and that the continued delay in doing so warrants mandamus relief. (Pls.' Opp. at 16–17.)

The Mandamus Act provides, in relevant part, that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To establish a claim for unreasonable delay pursuant to the Mandamus Act, a plaintiff must show: "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (cleaned up). Moreover, "[w]here mandamus relief is duplicative of an APA claim, it must be dismissed." *Esghai*, 2024 WL 4753799, at *7 (quoting *Kaur v. Mayorkas*, 2023 WL 4899083, at *13 (S.D.N.Y. Aug. 1, 2023)); *accord Benzman*, 523 F.3d at 132–33 (upholding dismissal of mandamus claim where it duplicated the APA count, "both as to the underlying allegedly mandatory duties and as to the relief sought").

That is the case here. Plaintiffs seek relief pursuant to both the Mandamus Act and APA. (Compl. ¶¶ 49–78.) Because the APA provides Plaintiffs with an adequate alternative avenue for

relief, they cannot satisfy the third requirement for mandamus relief. *See Qazi*, 2026 WL 1584662, at *11 ("[T]he availability of an APA claim leaves [p]laintiff unable to establish that there is no other adequate remedy available."). That remains true even where a "[p]laintiff failed to adequately plead that alternative remedy." *Esghai*, 2024 WL 4753799, at *7 (quoting *Cohen v. Jaddou*, 2023 WL 2526105, at *7). This conclusion is consistent with Second Circuit precedent. *See Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (affirming dismissal of a mandamus claim that duplicated relief sought under the APA); *Lyons*, 2023 WL 144879, at *9 (dismissing claim for mandamus relief because "an alternative adequate remedy" was "possible under the APA"); *Ying Yu Liu*, 2020 WL 2836426, at *10 (recognizing that because "an alternative adequate remedy [was] possible under the APA," mandamus relief was not available).

The Court therefore GRANTS the Motion with respect to Plaintiffs' Mandamus Act claim.[5]

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss is GRANTED in part and DENIED in part. The Government's Motion is DENIED insofar as it seeks dismissal of Plaintiffs' claims as moot or barred by the doctrine of consular nonreviewability. The Government's Motion is also DENIED insofar as it argues that there is no further agency action subject to judicial review under the APA. The Government's Motion is GRANTED, however, with respect to Plaintiffs' APA claims because the alleged delay is not unreasonable, as well as Plaintiffs' Mandamus Act claim. This action is dismissed without prejudice to Plaintiffs bringing a future action should Behbahani's

---

[5] Plaintiffs likewise seek declaratory relief declaring the Government's alleged delay in adjudicating Behbahani's immigrant visa application to be arbitrary and capricious, unreasonably delayed, and unlawfully withheld agency action under the APA. (Compl., Prayer for Relief.) The Declaratory Judgment Act, 28 U.S.C. § 2201(a), however, "does not by itself confer subject matter jurisdiction on the federal courts." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). It "is procedural in nature, and merely offers an additional remedy to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) (emphasis in original). Because Plaintiffs' APA and mandamus claims have been dismissed, the Court must also dismiss the request for declaratory relief. *See Esghai*, 2024 WL 4753799, at *9; *Xu*, 434 F. Supp. 3d at 60–61; *Zhang v. Wolf*, 2020 WL 5878255, at *7 (E.D.N.Y. Sept. 30, 2020).

immigrant visa application remain pending for a period that constitutes an unreasonable delay. The Clerk of Court is respectfully directed to terminate the Motion at ECF No. 22 and close this action.

SO ORDERED.

Dated: August 19, 2026
White Plains, NY



Nelson S. Román, U.S.D.J.